UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABOR RONA and LISA DAVIS,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES DEPARTMENT OF STATE; MARCO A. RUBIO, in his official capacity as Secretary of State; UNITED STATES DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, in her official capacity as United States Attorney General; OFFICE OF FOREIGN ASSETS CONTROL; LISA M. PALLUCONI, in her official capacity as Acting Director of the Office of Foreign Assets Control,<br><br>        Defendants. | Civil Action No. 25-3114 |

# DECLARATION OF GABOR RONA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Gabor Rona, hereby declare as follows:

1.  I am a plaintiff in the above-captioned action.

2.  I reside in New York, New York.

3.  I am a citizen of the United States and Hungary.

4.  Since 2015, I have served as Visiting Professor, and then Professor of Practice, at the Benjamin N. Cardozo School of Law in New York and Director of the Law and Armed Conflict

1

Project at the Cardozo Law Institute in Holocaust and Human Rights. At Cardozo, I teach international law, international criminal law, international humanitarian law (the law of armed conflict), and international human rights law. Since 2005, I have also taught international humanitarian law at Columbia Law School. In all my classes, I discuss, among other topics, international criminal justice, including ongoing investigations by the Office of the Prosecutor of the International Criminal Court ("ICC"). The ICC is an important feature of international law relevant to each of these courses since it is the primary mechanism, outside of each State's domestic courts, for seeking criminal accountability for the perpetrators of war crimes, crimes against humanity, and genocide.

5. I am the Chair of the International Humanitarian Law Committee of the American Branch of the International Law Association ("ABILA"), which organizes panel discussions and various communications on topics relating to the international laws of war, as well as the ICC and the Office of the Prosecutor's ongoing investigations. I am also a member of ABILA's Board of Directors.

6. Previously, I was a legal advisor in the legal division of the International Committee of the Red Cross where, among other matters, I represented the organization in connection with the establishment of the ICC.

7. Prior to the designation of the Prosecutor of the ICC, Mr. Karim Khan, under Executive Order 14,203, *Imposing Sanctions on the International Criminal Court* ("Executive Order 14,203"), I interacted with the ICC, including the Office of the Prosecutor, and expressed positions supportive of the Office of the Prosecutor in the course of my professional activities.

8. I have particular expertise and interest in jurisdictional issues concerning the investigation and prosecution of international crimes. In 2019, I submitted an *amicus curiae* brief

to the ICC, in support of the position of the Office of the Prosecutor, arguing that the ICC may exercise jurisdiction over alleged crimes committed in relation to the situation in Afghanistan in cases where those crimes occurred in third countries that are State Parties to the Rome Statute of the ICC.

9. Prior to the issuance of Executive Order 14,203 and Mr. Khan's designation, I regularly organized and spoke on panels and other events that addressed the ICC. I did so because I believe sharing information about the ICC and the work of the Office of the Prosecutor is important to achieving the goal of ending impunity for war crimes, crimes against humanity, and genocide, in those instances where States with the primary responsibility to exercise jurisdiction over international crimes are either unable or unwilling to act.

10. For instance, on March 18, 2022, I spoke on a panel hosted by the Center on National Security at Fordham Law School regarding the Office of the Prosecutor's investigation into crimes committed in Ukraine. Between November 2023 and February 2024, I also spoke on panels regarding accountability for violations of international law in the armed conflict between Israel and Palestine at law schools across the United States, including Yale Law School, Boston College School of Law, Santa Clara University School of Law, University of California Berkeley School of Law, Stanford Law School, and University of California College of Law San Francisco. During ABILA's annual "International Law Weekend" conference in October 2024, I also moderated panel discussions on the Russia/Ukraine and Israel/Palestine armed conflicts in my capacity as Chair of the International Humanitarian Law Committee.

11. At these panels, I discussed the critical role that the ICC plays in promoting and ensuring accountability for the most serious crimes of concern to the international community, including through the prosecution of those individuals who are most responsible for such crimes.

12. I have also contributed to online journals and blogs about international criminal law, including the *Just Security* blog, where I have written in support of positions taken by the Office of the Prosecutor and have made recommendations for the Prosecutor's investigation of war crimes in Ukraine.

13. Additionally, I have communicated with the Office of the Prosecutor to facilitate the placement of students in jobs and internships that support the Office of the Prosecutor.

14. The threat of enforcement of civil and criminal penalties under Executive Order 14,203 and the International Economic Emergency Powers Act has caused me to discontinue activities I was performing before Mr. Khan's designation under that Executive Order, and to abandon or reconsider future acts I had planned to undertake.

15. Among other acts I had planned to undertake, but which I discontinued, abandoned, or reconsidered in light of the Executive Order:

   a. I have decided not to submit further *amicus curiae* briefs to the ICC, despite the fact that there are matters before the ICC on which I would like to express my views, including the application or limits of head-of-state immunity in ICC proceedings. For example, this is likely to become a contested issue in the ICC's case against former Philippines President, Rodrigo Duterte, who was surrendered to the ICC on March 12, 2025. I have also reconsidered joining other *amicus curiae* submissions on issues related to the ICC's proper exercise of its jurisdiction.

   b. I have abandoned plans to write blogposts and articles on areas in my expertise relating to the work of the ICC, including on topics I had previously written about, such as ongoing investigations by the Office of the Prosecutor.

4

c. While I have continued to speak on panels about international criminal law, I no longer express certain opinions about the ICC's role out of fear that my speech would be construed as supportive of Mr. Khan and subject me to enforcement pursuant to Executive Order 14,203. For example, on March 27, 2025, I spoke at a diplomatic conference sponsored by the International Committee of the Red Cross on accountability for war crimes. A significant aspect of that topic was the ICC, but due to the Executive Order, I refrained from, *inter alia*: discussing the obligation of State Parties to cooperate with the ICC, including the Office of the Prosecutor; recommending ratification of the Rome Statute for States not already party to the Rome Statute; and discussing alternative mechanisms by which States that are not parties to the Rome Statute may cooperate with the ICC's investigations, including by providing evidence to the Office of the Prosecutor. I made clear in my opening remarks that I was limiting my speech about the ICC due to the Executive Order.

d. I have reconsidered whether and how to discuss the Office of the Prosecutor and its investigations and prosecutions in courses I teach, including with respect to the reading materials which I assign to students. For example, I no longer emphasize or promote the importance of the ICC, including the work of the Office of the Prosecutor, in the global scheme of criminal accountability, and I do not assign reading materials that do the same.

e. I have decided not to engage in further communications with the Office of the Prosecutor concerning the placement of students in jobs and internships that would assist the Office of the Prosecutor.

16.	I would have performed these actions while located in the United States and would have communicated to recipients in other countries via the Internet or telephonically.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in New York, New York on April 10, 2025.

_____
Gabor Rona