UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABOR RONA and LISA DAVIS,<br><br>         Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES DEPARTMENT OF STATE; MARCO A. RUBIO, in his official capacity as Secretary of State; UNITED STATES DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, in her official capacity as United States Attorney General; OFFICE OF FOREIGN ASSETS CONTROL; and LISA M. PALLUCONI, in her official capacity as Acting Director of the Office of Foreign Assets Control,<br><br>         Defendants. | Civil Action No. 25-3114 |

### DECLARATION OF LISA DAVIS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Lisa Davis, hereby declare as follows:

   1.   I am a plaintiff in the above-captioned action.

   2.   I am a citizen of the United States and a resident of Brooklyn, New York, temporarily located in Washington D.C.

   3.   Since 2010, I have worked as a Professor at the City of University of New York ("CUNY") School of Law. I am currently a tenured Professor of Law and the Co-Director of the Human Rights and Gender Justice Clinic. I have also served as a founding faculty advisor to the

1

Institute on Gender, Law, and Transformative Peace and the Sorensen Center for International Peace and Justice at CUNY School of Law, and a faculty advisor for the *CUNY Law Review*. In January 2025, I was appointed Senior Associate Dean of Clinical Programs at CUNY School of Law, a position I currently hold.

4.     From February 2024 until November 2024, I was seconded to the U.S. Department of State's Office of Global Criminal Justice, where I served as a Senior Advisor, advising on such matters as transitional justice, accountability in armed conflicts, and on courts and tribunals established to investigate and prosecute international crimes. In that capacity, I helped draft an internal policy on gender persecution, which among other things, recognized the abuses of women and LGBTQI+ persons in Afghanistan as gender persecution. I also developed policy recommendations related to reparations, persecution, conflict-related sexual and gender-based violence, children born in war, and intersectional discrimination.

5.     Article 49(2) of the Rome Statute of the International Criminal Court ("ICC") provides: "The Prosecutor shall appoint advisers with legal expertise on specific issues, including but not limited to, sexual and gender violence and violence against children."

6.     In September 2021, I was appointed by Mr. Karim Khan, the Prosecutor of the ICC, to serve as Special Adviser on Gender Persecution to the Prosecutor. I served in that role from September 2022 until January 2024.

7.     In my role as Special Adviser on Gender Persecution, I drafted the Office of the Prosecutor's *Policy on the Crime of Gender Persecution*. The Policy was designed to provide guidance to each of the country teams within the Office of the Prosecutor with regard to investigating, charging, and prosecuting crimes that may amount to gender persecution, including

targeting individuals based on their perceived gender. This work is particularly valuable given there has never been a successful prosecution for gender persecution at the ICC.

8. My duties included training, advising and providing other information to the investigators, analysts, and prosecutors within the Office of the Prosecutor regarding the development of strategies, policies, and legal positions concerning the investigation and prosecution of gender persecution. This included providing support and training on methods for working with victims, including marginalized populations, such as women, girls, and LGBTQI+ persons, to ensure sensitivity and minimize re-traumatization.

9. I also liaised with victim groups to identify individuals who might be able to provide evidence and facilitated victims' engagement with the Office of the Prosecutor. These efforts assisted with the preparation of applications for arrest warrants for senior leaders of the Taliban as part of the Afghanistan investigation.

10. My duties included contributing to the development of an external support base for the work of the Office of the Prosecutor, in part by representing the Office of the Prosecutor at outside speaking engagements and presenting the position of the Prosecutor.

11. This included organizing and participating in projects to educate investigators, analysts, prosecutors, and other interested parties about the *Policy on Crimes of Gender Persecution* with the objective of, among other things, providing guidance for pursuing successful domestic prosecutions.

12. For instance, in May 2023, I organized and spoke at the Office of the Prosecutor's Roundtable on Gender Persecution. The roundtable brought civil society organizations from 11 countries to the ICC to participate in a meeting on the crime of gender persecution. The event

underlined the Office of the Prosecutor's commitment to investigating and prosecuting gender persecution.

13. I also initiated the *Just Security* Blog Post Series on the *Policy on the Crime of Gender Persecution*, featuring eight blog posts by international criminal law experts analyzing the elements of the crime of gender persecution. I authored the first blog piece and coordinated with the authors for the remaining seven.

14. In June 2023, I participated, alongside Office of the Prosecutor staff, in the Public International Law and Policy Group's Experts Roundtable Webinar Series on Gender Persecution, which addressed the *Policy on Crimes of Gender Persecution* and how it will guide the Office of the Prosecutor.

15. Some of these events included the participation of Mr. Khan, including:

   a. a presentation to the Assembly of States Parties to the Rome Statute ("ASP") relating to the Office of the Prosecutor's *Policy on Gender-Based Crimes* and the launch of the *Gender Persecution Principles* in December 2023;

   b. an event hosted by the Office of the Prosecutor on the *Policy Paper on the Crime of Gender Persecution* in December 2022;

   c. a roundtable hosted by the ICC on *Crimes Against and Affecting Children* in November 2022; and

   d. an event hosted by the ASP on *Fighting Against Impunity for Gender-Based Crimes: A Policy Paper on Gender Persecution* in December 2021.

16. I also participated in numerous panels and spoke at events hosted by States Parties to the ICC and supportive non-governmental organizations and international organizations, including the following events:

4

a. a briefing hosted by the U.N. LGBTI Core Group of States on the Policy Paper on Gender Persecution, co-sponsored by the Permanent Missions of Colombia, Costa Rica, and the United Kingdom in September 2022 (attended and supported by the United States Mission);

b. a meeting hosted by the European Parliament's Subcommittee on Human Rights, providing a briefing on Afghanistan in November 2022;

c. an event hosted by the Office of the High Commissioner for Human Rights entitled, "*A Conversation with ICC Special Adviser on Gender Persecution, Professor Lisa Davis*," in April 2023;

d. a symposium hosted by the U.S. Institute for Peace, entitled, "Missing Peace Global Symposium on Conflict-Related Sexual Violence: *A Tenth Anniversary Convening of Scholars, Policymakers, Practitioners & Survivors and Victims*," in November 2023; and

e. a closed-door consultation hosted by the U.N. Independent International Fact-Finding Mission on the Islamic Republic of Iran on the crimes of Gender Persecution and Normative Developments on Gender Crimes in November 2023.

17. In my role as Special Adviser on Gender Persecution, I also collaborated, conferred, and coordinated, when appropriate, with other Special Advisers to the Prosecutor on legal and policy matters related to gender persecution. I served as a member of the ICC Advisory Committees for the Office of the Prosecutor's *Sexual and Gender-Based Crimes Policy* and *Policy on Children*. This involved, among other things, participating in review sessions with the lead drafters, commenting on drafts, and assisting with the publication and promotion of these policies.

18. In December 2024, Mr. Khan appointed me as Special Adviser on Gender and Other Discriminatory Crimes, a position I currently hold. This expanded my mandate to include all crimes that target individuals based on their identity (including genocide, apartheid, ethnic, racial and national discrimination) and covers all situations under investigation by the ICC.

19. Prior to Mr. Khan's designation under Executive Order 14,203, *Imposing Sanctions on the International Criminal Court* ("Executive Order 14,203"), in my capacity as Special Adviser on Gender Persecution and subsequently as Special Adviser on Gender and Other Discriminatory Crimes, I regularly and directly interacted with, and provided advice to, Mr. Khan and other members of the Office of the Prosecutor.

20. For instance, I provided advice concerning and contributed to the Prosecutor's applications for arrest warrants for the Supreme Leader of the Taliban, Haibatullah Akhundzada, and the Chief Justice of the "Islamic Emirate of Afghanistan," Abdul Hakim Haqqani, for having perpetrated the crime against humanity of persecution on gender grounds, under article 7(1)(h) of the Rome Statute, which were filed on January 23, 2025. Specifically, as indicated in Mr. Khan's statement concerning the applications, they allege, among other things, that "these two Afghan nationals are criminally responsible for persecuting Afghan girls and women, as well as persons whom the Taliban perceived as not conforming with their ideological expectations of gender identity or expression, and persons whom the Taliban perceived as allies of girls and women." Mr. Khan's statement further noted that "[t]his ongoing persecution entails numerous severe deprivations of victims' fundamental rights" that "were also committed in connection with other Rome Statute crimes." The statement went on to note: "Perceived resistance or opposition to the Taliban was, and is, brutally repressed through the commission of crimes including murder,

imprisonment, torture, rape and other forms of sexual violence, enforced disappearance, and other inhumane acts."

21. I also advised the Prosecutor and the Office of the Prosecutor in regard to all other situations under investigation. These include, for example, the situations in:

    a. Ukraine, where the Office of the Prosecutor is investigating allegations of war crimes, crimes against humanity, and genocide committed on the territory of Ukraine from November 21, 2013 onward. The international crimes under investigation include gender-based violence against detainees, targeting of individuals based on gender identity and sexual orientation, as well as rape and conflict-related sexual violence. To assist this investigation, I co-authored a report published in November 2024 by CUNY Law's Human Rights and Gender Justice Clinic and MADRE, an international human rights organization, entitled *Gender Persecution in Ukraine*.

    b. Mali, where the international crimes under investigation include rape, sexual slavery, and other inhumane acts in the form of forced marriage. The charges brought by the Prosecutor against Al Hassan Ag Abdoul Aziz included the crimes against humanity of persecution on gender grounds against women and girls, as well as persecution on religious grounds against the civilian population at-large.

    c. Sudan, where the crimes under investigation by the Office of the Prosecutor include genocide, war crimes, and crimes against humanity. The charges brought against Abd-al-Rahman constitute the first ICC prosecution in which crimes committed exclusively against men and boys have been expressly

7

        charged as gender-based crimes (specifically, as persecution on intersecting political, ethnic and gender grounds). The outstanding arrest warrant for President Omar Hassan Ahmad Al Bashir for committing genocide, among other crimes, alleges that "thousands of civilian women" were subjected to acts of rape by military forces under his control.

    d. Colombia, where the Office of the Prosecutor's preliminary examination focused on alleged crimes against humanity and war crimes committed in the context of the armed conflict between and among government forces, paramilitary armed groups, and rebel armed groups, including rape and other forms of sexual violence. In October 2021, the Prosecutor and the Government of Colombia signed an agreement designed to support Colombia's domestic accountability processes that included commitments concerning, among other things, the development of good practices for addressing gender persecution. These efforts supported a trial judgement finding crimes against humanity of persecution based on gender, race, and ethnicity.

    e. Myanmar/Bangladesh, where the crimes under investigation by the Office of the Prosecutor include the crimes against humanity of persecution and deportation allegedly committed against the Rohingya population. In the decision authorizing the investigation, the alleged crimes included gang rapes, mutilations, and other forms of sexual violence against women and third-gender persons.

22. My duties as Special Adviser on Gender and Other Discriminatory Crimes also include:

    a. interacting with victims and witnesses of international crimes and facilitating their engagement with the Office of the Prosecutor;

    b. conducting evidence reviews;

    c. reviewing and commenting on draft legal filings by Office of the Prosecutor staff for submission in proceedings before the ICC's pre-trial and trial chambers;

    d. providing trainings to Office of the Prosecutor staff regarding the crime of gender persecution;

    e. serving on delegations to situation countries to provide local prosecutors and judges training on the crime of gender persecution; and

    f. presenting in-country training for domestic prosecutors and judges concerning situations under investigation by the Office of the Prosecutor.

23. As Special Adviser on Gender and Other Discriminatory Crimes, I was asked to build upon the Office of the Prosecutor's *Policy on the Crime of Gender Persecution* by contributing to the drafting of the Office of the Prosecutor's *Public Principles on Gender Persecution*, which (but for the Executive Order) would have been published in 2025. The *Public Principles on Gender Persecution* address persecution both before and after conflict, taking into account principles of prevention, strategies for prosecution, and remedies for relief and recovery.

24. I accepted my appointments as Special Adviser in my personal capacity, and not as a representative of the CUNY School of Law or any other institution.

25. My services as Special Adviser have been provided on a *pro bono* basis (other than compensation for incidental costs associated with my role, such as travel).

26. The threat of enforcement of civil and criminal penalties under the International Economic Emergency Powers Act and under Executive Order 14,203 have caused me to discontinue activities I was performing before Mr. Khan's designation under that Executive Order, and to abandon or to reconsider acts I had planned to undertake.

27. To that end, I informed the Registrar of the ICC of my decision to step back from my work as Special Adviser in view of my intention to comply with Executive Order 14,203, until and unless the Executive Order is no longer in force, its legality has been determined, or I receive confirmation that I do not face a risk of enforcement. I further informed the Registrar that were it not for the threat of enforcement of the sanctions regime, I would continue my work as Special Adviser and that I intend to resume my functions once deemed possible.

28. Among the acts that I had planned to undertake, but which I discontinued, abandoned, or reconsidered in light of the Executive Order, include the following:

   a. I stopped interacting with, and providing advice to, Mr. Khan and the Office of the Prosecutor on matters related to gender and other discriminatory crimes.

   b. I stopped advising the Prosecutor and Office of the Prosecutor about applications for arrest warrants related to gender and other discriminatory crimes.

   c. I stopped working on drafting the *Gender Persecution Principles*, which are due to be published this year. This work would have included organizing workshops and consultations in New York and The Hague with other stakeholders from around the world to develop those policies. I have also ceased planning to launch the *Public Principles on Gender Persecution* at the Assembly of States Parties to the ICC in December 2025.

      d.  I have refrained from pursuing an additional policy paper proposal related to gender and other discriminatory crimes.

      e.  I adjusted the operational functioning of the Gender Persecution Observatory, hosted within the Human Rights and Gender Justice Clinic at CUNY Law. The clinic is no longer able to convene expert panel workshops with the relevant employees and Special Advisers of the Office of the Prosecutor.

      f.  I have refrained from publishing articles related to the Prosecutor's work. I withdrew a pending publication and cancelled my participation in a relevant podcast episode. I have also declined other writing opportunities concerning the Prosecutor's work.

29.    I would have performed such acts while in the United States and my speech would have been communicated to recipients in other countries via the Internet or telephonically.

30.    My inability to perform the actions described above impacts thousands of victims of international crimes under investigation by the ICC who are looking to the ICC to provide justice for the crimes they have suffered but whose access to justice is now imperiled. Without proper training, prosecutors risk deterring witnesses from coming forward or otherwise retraumatizing victims of sexual violence or gender-based crimes. Some of these victims, being queer, are not "out" in their refugee communities or otherwise face ongoing risk of harm to family members who remain in their countries of origin. Discriminatory crimes impact victims of all genders and sexualities, including at the intersection of ethnic, racial, and national lines. The ability to provide advice and other information to the Prosecutor and the Office of the Prosecutor concerning how to operate in a gender-aware and intersectional context is crucial to advancing the objective of achieving international justice and accountability.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in Brooklyn, NY on April 10, 2025.

_____
Lisa Davis