**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GABOR RONA and LISA DAVIS,

                Plaintiffs,

      v.

DONALD J. TRUMP, *et al*.,

                Defendants.

Civil Action No. 25-3114 (JMF)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

EO 14,203 resurrects the same speech-targeting sanctions this Court previously enjoined. *Open Soc'y Justice Initiative v. Trump*, 510 F. Supp. 3d 198, 210-13, 217 (S.D.N.Y. 2021). Defendants' Opposition provides no basis for concluding that the decision was wrong. Nothing therein calls into question the fact that EO 14,203 imposes unconstitutional content- and viewpoint-based restrictions on speech; is unconstitutionally vague; and exceeds the President's authority under IEEPA. The chilling of Plaintiffs' speech constitutes irreparable harm, and the equities and public interest support a preliminary injunction and expeditiously proceeding to a final judgment, ECF No. 58.

## I.    The EO Violates the First Amendment.

### A.    The EO Is a Content- and Viewpoint-Based Regulation.

Defendants accept this Court held an identically worded restriction to be a content-based regulation subject to strict scrutiny because it restricted speech "if, and only if, it has the function or purpose of benefitting" the ICC Prosecutor. *Open Soc'y*, 510 F. Supp. 3d at 211 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010)).

Defendants are wrong that the Court should rule otherwise here because of their contention that Plaintiffs' speech is somehow not prohibited by the EO. Defendants refer only to Plaintiff Rona's *amicus* submissions, Opp. at 11-12, ignoring the many additional forms of speech that Plaintiffs provide to Mr. Khan. This includes all of the activities of Plaintiff Davis—his Special *Adviser* responsible for providing advice, evidence, and training on gender and other discriminatory crimes. Davis Declaration ¶¶7-10, 19-22. Defendants likewise disregard nearly all of Plaintiff Rona's speech, which includes assisting in placing students with the Office of the Prosecutor ("OTP") as well as writing articles, speaking on panels, and delivering lectures in

1

support of the OTP.  Rona Declaration ¶¶9-13, 15.[1]  Plaintiffs' speech thus falls within the prohibition on "services" provided "to" or "for the benefit" of Mr. Khan.

Defendants are not helped by contending they have made "clear statements that EO 14,203's sanctions will not apply to protected speech" and that these statements are "entitled to judicial deference."  Opp. at 13.  Inasmuch as Defendants rely on their own opposition brief, *id.*, this is "nothing more than a convenient litigating position" to which no deference is owed, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (internal quotation marks omitted).  Similarly, OFAC's self-judging answer to a FAQ, https://ofac.treasury.gov/faqs/1190, assuring the public that it respects the First Amendment, is, at best, a meaningless "promise[]" to use "an unconstitutional [law] … responsibly," *United States v. Stevens*, 559 U.S. 460, 480 (2010).

Nor is the EO saved by a letter sent by OFAC in connection with a different sanctions regime.  Opp. at 12 (citing Letter to Foundation for Global Political Exchange, Nov. 8, 2024).  OFAC appears not to have publicized the letter: Defendants do not cite any Government publication, only the website of the *Foundation's counsel*, who posted it.  *Id.*  The letter is a particularly poor example of respect for the First Amendment.  OFAC issued it only *after* being sued to vindicate the Foundation's right to free speech, *Found. for Glob. Pol. Exch. v. Dep't of the Treasury*, No. 1:23-cv-03777 (D.D.C.), and permitted the speakers' participation *two years* after the conference had initially been scheduled, Letter at 1.

Regardless, OFAC's letter simply notes that "including sanctioned persons as speakers" at a specified conference and "actions ordinarily incident to facilitating their participation as

---

[1] Defendants concede that submission of *amicus* briefs to the ICC may be prohibited by the EO. Opp. at 12.  Their suggestion that the EO only bars briefs "drafted at the specific request of and in coordination with Khan," *id.*, is refuted by this Court's prior finding that *amicus* briefs may be prohibited if "initiated and authored entirely independently," *Open Soc'y*, 510 F. Supp. 3d at 210 n.5.

speakers" were not "service[s] prohibited by U.S. sanctions." *Id*. at 2-3. The letter thus does not address Plaintiffs' speech.[2]

Further, OFAC's letter was based on the conference organizers' *sui generis* "circumstances," including the particular "facts and representations" made to OFAC that the sanctioned persons would *not* be provided with "any … thing of value" or "any specialized training or assistance." *Id*. The circumstances of the conference thus contrast with Plaintiffs' circumstances here, as they are blocked from providing advice, training, and evidence that benefit Mr. Khan.[3]

Equally unavailing is Defendants' assertion that the EO's *purpose* is not to "censor certain speech or a certain viewpoint." Opp. at 13. Even if true, that is irrelevant. Whether speech violates the EO depends on its content and viewpoint: whether it directly or even indirectly benefits Mr. Khan. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive [or] content-neutral justification." *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015).

Finally, Defendants derive no assistance from cases that involve incidental burdens on speech. Those cases concern regulation of *conduct* and not—as here—protected speech. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705 (1986) (regulating "sexual activity"); *Church of the Am. Knights of the KKK v. Kerik*, 356 F.3d 197, 209 (2d Cir. 2004) ("New York's anti-mask law"); *Schickel v. Dilger*, 925 F.3d 858, 875 (6th Cir. 2019) (noting gift ban "does not forbid *any*

---

[2] Defendants are not helped by attempting to link the FAQ and letter to the Berman Amendment. Even if the EO complies with the Amendment, Defendants concede it would apply only to a *subset* of Plaintiffs' speech. Opp. at 21-22.

[3] The cases Defendants cite, *see* Opp. at 13, are inapposite because they concern non-OFAC interpretations that "reflect the agency's fair and considered judgment on the matter in question," *SmithKline Beecham Corp.*, 567 U.S. at 155 (internal quotation marks omitted). Here, neither the generalized FAQ nor the *ad hoc* letter interprets the EO.

interaction or the utterance of *any* word") (emphasis in original); *Hobbs v. Cty. of Westchester*, 397 F.3d 133, 152 (2d Cir. 2005) (noting regulation "affects only the manner of presentation through the use of props and/or equipment"); *Kadi v. Geithner*, 42 F. Supp. 3d 1, 34, 41 (D.D.C. 2012) (noting case concerned "making financial transfers" and not "pure speech or advocacy").[4]

### B.    The EO Fails Strict Scrutiny.

Like its antecedent, EO 14,203 is overinclusive and fails strict scrutiny because it is "not narrowly tailored" as it prohibits "significantly more speech than even Defendants seem to believe is necessary to achieve their end." *Open Soc'y*, 510 F. Supp. 3d at 212-13.[5]

Defendants do not dispute that the EO prohibits speech unrelated to the purported interest in shielding "protected persons" from prosecution. Opp. at 15-16. They accept that it bars speech in connection with prosecutions which the United States supports. For example, it forbids Plaintiff Davis from advising Mr. Khan about sexual violence in connection with the investigation of international crimes in Darfur. Davis Declaration ¶¶21(c), 28(a)-(b). And it bars Plaintiff Rona from submitting *amicus* briefs supporting Mr. Khan's views regarding whether figures like Russian President Vladimir Putin are entitled to head-of-state immunity. *See* Rona Declaration ¶15(a). Defendants do not argue that prohibiting such speech advances any governmental interest, compelling or otherwise.

Defendants argue instead that the restrictions are narrowly tailored because depriving Mr. Khan of the benefit of Plaintiffs' speech could "create leverage" that might influence prosecutorial decisions. Opp. at 15-16. Defendants do not substantiate the claim, despite bearing that burden. *U.S.* v. *Playboy Entm't Grp.*, 529 U.S. 803, 817 (2000) ("The breadth of this content-based

---

[4] Defendants do not contest that if EO 14,203 is content-based, it is also viewpoint-based.

[5] The EO would also fail intermediate scrutiny because it "burden[s] substantially more speech than necessary." *Id.* at 212 n.7 (citing *Holder*, 561 U.S. at 26-27).

restriction of speech imposes an especially heavy burden on the Government to explain why a less restrictive provision would not be as effective[.]") (internal quotation marks omitted). Even if restricting Plaintiffs' speech creates "leverage," this only suggests that the restrictions are a *means* for furthering Defendants' goal, not that there is no "less restrictive alternative," *id*. at 813, nor that the restrictions do not "burden substantially more speech than necessary," *Holder*, 561 U.S. at 27 (internal quotation marks omitted). Defendants may not "sacrific[e] speech for efficiency," even where "silencing the speech" is "the path of least resistance." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (internal quotation marks omitted).

Defendants are likewise wrong to argue that the "political branches['] … conclu[sion] that particular restrictions are necessary to achieve foreign-policy and national-security goals" renders constitutional the EO's content-based restrictions. Opp. at 16. Defendants do not substantiate that such a determination has been made, particularly concerning speech associated with prosecutions unrelated to the purported national emergency. In fact, Congress and the Executive alike *support* many such prosecutions. Complaint at 8-16; Pl. Br. at 3-7; *see, e.g.*, H.R. 2617, 117th Cong. § 7073 (2023); Press Release, *Durbin & Graham Continue to Press the Biden Administration to Support the ICC's Investigation into Atrocities in Ukraine* (June 23, 2023) ("[I]t is possible to support credible investigations by the court without putting our own servicemembers at risk of prosecution…. That is why Congress passed—on a bipartisan basis—carefully crafted authorities for providing support to the ICC in appropriate circumstances.").[6]

Nor would any such finding cure the EO's failure to narrowly tailor its speech ban to the asserted governmental interest. Restrictions on speech are not narrowly tailored where there is

---

[6] https://www.durbin.senate.gov/newsroom/press-releases/durbin-and-graham-continue-to-press-the-biden-administration-to-support-the-iccs-investigation-into-atrocities-in-ukraine.

"little evidence that the pure-speech activities proposed" by plaintiffs would threaten the asserted interest. *Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*, 686 F.3d 965, 997, 1001 (9th Cir. 2012).

### C.    The EO Is Unconstitutionally Overbroad.

Defendants cannot save the EO by appealing to its national-security justification. Opp. at 14-15. The EO is facially unconstitutional under the overbreadth doctrine as it "punishes a substantial amount of protected speech relative to" any purported "legitimate sweep." *Brooklyn Branch of the NAACP v. Kosinski*, 735 F. Supp. 3d 421, 449, (S.D.N.Y. 2024) (citing *Virginia v. Hicks*, 539 U.S. 113, 122 (2003)).[7] It "chill[s] … constitutionally protected conduct," as "prudent citizens will avoid behavior that *may* fall within the scope of a prohibition." *Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006) (emphasis in original).[8] Thus, even assuming that some of the EO's speech limitations were permissible (they are not),[9] the EO "extends far beyond those limitations" and prohibits speech benefiting Mr. Khan concerning the many prosecutions that the United States supports. *Kosinski*, 735 F. Supp. 3d at 449. It is therefore facially unconstitutional. *Stevens*, 559 U.S. at 473.

The EO cannot be cured by construing it narrowly. Defendants unsurprisingly do not contend that narrowing is possible, as the text "simply leave[s] no room for a narrowing construction," *Bd. of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569, 575 (1987). *See also*

---

[7] Defendants mischaracterize Plaintiffs' challenge as being "as-applied," Opp. at 1, when it is facial.

[8] The EO's "substantial chilling effect" on speech protected by the First Amendment also makes it facially void for vagueness. *Farrell*, 449 F.3d at 496-97; *Johnson v. United States*, 576 U.S. 591, 602-3 (2015).

[9] Defendants have not satisfied their burden to prove a compelling interest in banning *any* speech for Mr. Khan's benefit. *Playboy*, 529 U.S. at 816-17.

*Stevens*, 559 U.S. at 481.  Further, attempting to narrow the EO would introduce additional—and impermissible—ambiguity.  *Jews for Jesus*, 482 U.S. at 576 (rejecting saving construction in overbreadth challenge where "the vagueness of th[e] suggested construction itself presents serious constitutional difficulty").  The entire EO thus fails First Amendment scrutiny.

## II.    The EO Violates the Fifth Amendment.

Nothing in the Opposition shows that the prohibition on "services by, to or for the benefit of" a designated person "provide[s] a person of ordinary intelligence fair notice of what is prohibited."  *U.S. v. Williams*, 553 U.S. 285, 304 (2008).  Nor do Defendants prove that the EO meets the even "greater degree of specificity" required for a regulation that "reach[es] expression sheltered by the First Amendment," *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010) (internal quotation marks omitted).

Defendants' focus on the meaning of "services," Opp. at 18-19, misses the point.  The EO is unconstitutionally vague because it fails to define what is meant by "services … *for the benefit of*" a designated person.  Defendants are wrong that this phrase, which they accept includes "the *indirect* provision of services," Opp. at 18-19 (emphasis added), is sufficiently clear to pass constitutional muster.  Defendants' brief underscores how the language's vagueness leads to incoherent results.  The prohibition on the "*indirect* provision of services" cannot be squared with Defendants' simultaneous assertion that the EO only prohibits an *amicus* brief if "drafted at the specific request of and in coordination with Khan," *id.* at 11—*i.e.*, a *direct* service.

Defendants are silent regarding *Exxon Mobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220 (N.D. Tex. 2019).  That decision held that language prohibiting the "receipt of … services" from a sanctioned entity was unconstitutionally vague because it was unclear whether it prohibited solely the receipt of a benefit when "services are *aimed* at benefitting" a person or whether it also prohibits "any *incidental* receipt of a benefit resulting from the services."  *Id.* at 231-33 (emphasis

added) (internal quotation omitted).  The same is true for EO 14,203, which is likewise unclear whether "services … for the benefit of"—*i.e.*, the "indirect provision of services"—is limited to services "*aimed* at benefitting" Mr. Khan or includes services that provide him with "any *incidental*" benefit.

Plaintiffs thus cannot know whether, for example, drafting a manual on best practices for interviewing survivors of sexual violence constitutes a prohibited "indirect provision of [a] service[]," Opp. at 18-19, to Mr. Khan.  Nor can they know whether speech promoting accountability for international crimes on a podcast or in other public settings indirectly provides him a service.  Tellingly, the Opposition is silent about nearly all of Plaintiffs' forms of speech, Pl. Br. at 24, and does nothing to clarify the EO's unconstitutional vagueness.  Plaintiffs are thus constrained to self-censor.

*Holder* does not resolve the EO's ambiguity.  That case concerned the term "services to," 561 U.S. at 23-24, not "services … *for the benefit of*."  While "services to" may "indicate a connection between the service and the" sanctioned person, *id.*, the same cannot be true of the broader term "service … for the benefit of" because "each term [must] be given a separate meaning," *Kirschenbaum v. 650 Fifth Avenue*, 257 F. Supp. 3d 463, 517 (S.D.N.Y. 2017).

The use of "similar terms" in other EOs does not make EO 14,203 constitutional.  Opp. at 17.  Courts considering similar terms have found them to be constitutionally suspect.  *See Exxon Mobil*, 430 F. Supp. at 220 (finding similar terms, including "receipt of services," vague); *U.S. v. Al-Arian*, 308 F. Supp. 2d 1322, 1340-41 (M.D. Fla. 2004) (interpreting EO prohibiting the making or receipt of "funds, goods, or services to or for the benefit of" a designated terrorist to include a *scienter* requirement to avoid "unconstitutional[] vague[ness]").  The Opposition ignores these cases.  *See* Pl. Br. at 23.

Finally, the EO's vagueness does not become "constitutionally tolerable" because Plaintiffs can "'clarify the meaning of the regulation by [their] own inquiry, or by resort to an administrative process,'" Opp. at 19 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)). *Hoffman* concerned an "economic regulation" that was "subject to a less strict vagueness test" than the "more stringent" one required for a regulation like EO 14,203 that "interferes with the right of free speech." *Id.* at 498-99. *See also Copeland v. Vance*, 893 F.3d 101, 114 (2d Cir. 2018). Regardless, the ability to seek clarification does not resolve the EO's constitutionality.[10] "[T]he burden of providing fair notice [of proscribed conduct] remains with the agency—not the regulated party." *Exxon Mobil*, 430 F. Supp. 3d at 230. The EO is thus facially void for vagueness.

### III.    The EO Is *Ultra Vires*.

The Opposition does not call into question the Court's prior ruling that it may review the EO for "compliance with the statute that purportedly authorizes" its issuance. *Open Soc'y*, 510 F. Supp. 3d at 214. Defendants' contention that the Court did not address the phrase "[t]his subsection does not confer or imply any right to judicial review" in §1702(c), Opp. at 20 n.7, is of no moment. The decision rested on the "long history of judicial review of illegal executive action" in equity, which correctly led the Court to conclude that "[i]f Congress did not expect there to be an equitable mechanism for judicial review of the executive branch's exercise of authority under section 1702, [it] would be peculiar … to include" in §1702 the clause "[i]n any judicial review of a determination made under this section." *Open Soc'y*, 510 F. Supp. 3d at 214.

---

[10] Defendants concede that Plaintiffs were not required to apply for an OFAC license. *See* Opp. at 19; *see also Open Soc'y*, 510 F. Supp. 3d at 212 (quoting *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 764 (1988)).

The disclaimer Defendants point to does not suggest otherwise. An equitable mechanism for judicial review "do[es] not depend upon the availability of a statutory cause of action" but "instead … seek[s] a 'judge-made remedy' for injuries stemming from unauthorized government conduct." *Sierra Club v. Trump*, 963 F.3d 874, 890-91 (9th Cir. 2020) (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)); *see also Dart v. U.S.*, 848 F.2d 217, 223 (D.C. Cir. 1988); *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 80 (D.D.C. 2020) (enjoining President and Commerce Secretary from enforcing restrictions where "prohibitions likely exceed the lawful bounds proscribed by [§1702(b)(3) of] IEEPA"). Nor does anything in IEEPA foreclose this equitable remedy, and Defendants point to none.[11]

Defendants are also not helped by the fact that the EO states that it will be "implemented consistent with applicable law," Opp. at 20. Such a conclusory statement rests on Defendants' good graces and conflicts with the conspicuous absence of any Berman Amendment carve-out, which could only have been the product of a deliberate choice.

Equally unavailing is Defendants' invocation of OFAC's guidance for the Iran sanctions regime. Opp. at 21. OFAC has not issued guidance for EO 14,302 (nearly four months later), and the regulations Defendants cite provide they cannot be relied upon for construing other sanctions regimes. *See* 31 C.F.R. § 560.101.

---

[11] The argument that "Plaintiffs cannot obtain relief against the President for his actions in connection with the EO" because "[f]ederal courts have 'no jurisdiction ... to enjoin the President in the performance of his official duties,'" Opp. at 20 (quoting *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866)), is mistaken. The "operative decisions that pose a threat to Plaintiffs are delegated to agents of the President—namely, the other individual Defendants—against whom injunctive and declaratory relief is available." *Open Soc'y*, 510 F. Supp. 3d at 214. The EO can thus be challenged "as *ultra vires*" because Plaintiffs can "seek to block" its "implementation by the subordinate official Defendants." *Id.*

Regardless, those regulations would not exclude Plaintiffs' speech from the Berman Amendment as "bespoke" materials because the interpretation was specific to "payment of advances" for informational materials not yet created. 31 C.F.R. § 560.210(c)(2). The case Defendants rely upon emphasized that "*in the case of commercial goods*, the key distinction rests between informational materials that are widely circulated in a standardized format and those that are bespoke." *U.S. v. Amirnazmi*, 645 F.3d 564, 587 (3d Cir. 2011) (emphasis added). Such "bespoke" commercial goods do not include Plaintiffs' speech, which concerns, *inter alia*, the drafting of the OTP's *Gender Persecution Principles*, Davis Declaration ¶10(c), the facilitation of witness testimony by highly vulnerable victims, *id.* ¶¶8-9, and the submission of *amicus* briefs, Rona Declaration ¶15(a).

## IV. A Preliminary Injunction Is Warranted.

The remaining factors favor a preliminary injunction. There is irreparable harm: Plaintiffs are chilled from engaging in speech, causing their work to grind to a halt. Defendants do not address the Court's prior holding that a preliminary injunction would "prevent irreparable harm" by removing "[t]he prospect of enforcement under [IEEPA]," a threat that is "caus[ing] Plaintiffs not to speak, and hence to forgo exercising their First Amendment rights." *Open Soc'y*, 510 F. Supp. 3d at 216. Even if Plaintiffs' showing of "irreparable harm depend[ed] entirely on … [the] likelihood of success on the merits of their First Amendment claim," Opp. at 22, that would support a preliminary injunction because they are likely to succeed and "irreparable harm" is thus "presume[d]," *Open Soc'y*, 510 F. Supp. 3d at 216 (cleaned up).

Defendants' alleged "national-security and foreign-policy interests" do not weigh against an injunction. Opp. at 22. In rejecting this argument before, the Court admonished that "national-security concerns must not become a talisman used to ward off inconvenient claims." *Open Soc'y*, 510 F. Supp. 3d at 216-17. That remains true. Defendants' national security-based protestations

are still "inadequate to overcome Plaintiffs' and the public's interest in the protection of First

Amendment rights." *Id*. at 217.  The balance of equities favors an injunction.  *Id*.


Dated: June 2, 2025                      Respectfully submitted,

                                         **GABOR RONA AND LISA DAVIS**

                                         By their attorneys,
                                         /s/ Andrew B. Loewenstein
                                         Andrew B. Loewenstein (*pro hac vice*)
                                         Christopher Hart (*pro hac vice*)
                                         Ariella Katz Miller (*pro hac vice*)
                                         FOLEY HOAG LLP
                                         Seaport West
                                         155 Seaport Boulevard
                                         Boston, MA 02210
                                         617-832-1000
                                         aloewenstein@foleyhoag.com
                                         chart@foleyhoag.com
                                         arkatz@foleyhoag.com

                                         Nicholas M. Renzler (NR1608)
                                         Hannah E. Sweeney (6202584)
                                         FOLEY HOAG LLP
                                         1301 Avenue of the Americas
                                         New York, NY 10019
                                         212-812-0400
                                         nrenzler@foleyhoag.com
                                         hsweeney@foleyhoag.com

                                         James A. Goldston (2327435)
                                         Esti T. Tambay (ET2721)
                                         Genevieve B. Quinn (GQ9239)
                                         OPEN SOCIETY FOUNDATIONS
                                         Open Society Justice Initiative
                                         224 West 57th Street
                                         New York, NY 10019, United States
                                         212-548-0600
                                         james.goldston@opensocietyfoundations.org
                                         esti.tambay@opensocietyfoundations.org
                                         genevieve.quinn@opensocietyfoundations.org

                                         *Counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)</u>

I, Andrew B. Loewenstein, counsel for Plaintiffs, hereby certify that the foregoing memorandum of law complies with the word count limitation set forth in the Rule 7.1(c) of the Local Rules of the U.S. District Court for the Southern District of New York.  This document contains 3,497 words, excluding the caption, table of contents, table of authorities, signature block, and required certificates, as permitted by Local Rule 7.1(c).

<u>/s/ Andrew B. Loewenstein</u>
Andrew B. Loewenstein