UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABOR RONA and LISA DAVIS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES DEPARTMENT OF STATE; MARCO A. RUBIO, in his official capacity as Secretary of State; UNITED STATES DEPARTMENT OF THE TREASURY; SCOTT K. H. BESSENT, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her official capacity as United States Attorney General; OFFICE OF FOREIGN ASSETS CONTROL; and LISA M. PALLUCONI, in her official capacity as Acting Director of the Office of Foreign Assets Control,<br><br>　　　　Defendants. | No. 25 Civ. 3114 (JMF) |

**JOINT LETTER ON THE IMPORT OF THE REGULATIONS ON CONSOLIDATION AND/OR THE MERITS**

　　　　In accordance with the Court's Order of June 20, 2025, ECF No. 65, the parties submit this joint letter setting out their respective positions concerning the import of the regulations that the Department of the Treasury's Office of Foreign Assets Control ("OFAC") published on July 1, 2025 ("Regulations"), 90 Fed. Reg. 28012, on (a) consolidation and/or (b) the merits.

**I.      Defendants' Position**

First, § 528.205(a) specifically incorporates the exemptions set out in 50 U.S.C. § 1702(b). That statutory subsection includes the exemption at 50 U.S.C. § 1702(b)(3) for "information or informational materials," as discussed in the parties' memorandums addressing the motion for a preliminary injunction. In their moving papers, plaintiffs argued that Executive Order 14,203's "omi[ssion of] any reference to [this] exemption" implied that the Executive Order "does not exempt importation or exportation of information or informational materials." (Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 25-26). Although the government disputed that inference (Defs.' Mem. in Opp. to Mot. for Prelim. Inj. at 20-21), it is untenable in light of the new regulations.

Second, § 528.501 incorporates the licensing procedures of part 501 subpart E. That subpart, in turn, specifies procedures by which individuals may apply for specific licenses "to engage in any transactions prohibited by" the sanctions regulations. While OFAC has not opined on whether a license is necessary for plaintiffs and plaintiffs have not applied for one, a license, if determined to be necessary and issued by OFAC, could provide plaintiffs with the relief they seek without the necessity of the extraordinary relief of an injunction. That alternative undercuts plaintiffs' claims that they will suffer irreparable harm absent an injunction. Moreover, principles of equity require that injunctive relief be no broader than necessary to provide relief to the plaintiffs, and an injunction cannot be necessary if plaintiffs can obtain what they assertedly require another way. *See Trump v. CASA, Inc.*, No. 24A884, slip op. 17-18 (U.S. June 27, 2025), https://www.supremecourt.gov/opinions/24pdf/24a884_8n59.pdf. And an agency's "willing[ness] to give pre-enforcement advice," such as guidance in response to a license request, is an important factor in addressing a vagueness challenge, as plaintiffs raise here. *United States v. Sun & Sand Imports, Ltd., Inc.*, 725 F.2d 184, 187 (2d Cir. 1984).

Third, § 528.702 states that appendix A of part 501 "provides a general framework for the enforcement of all economic sanctions programs administered by OFAC, including enforcement-related definitions, types of responses to apparent violations, general factors affecting administrative actions, civil penalties for failure to comply with a requirement to furnish information or keep records, and other general civil penalties information." Appendix A, in turn, extensively sets out guidance for the public regarding types of actions OFAC may take, ranging from no action to a criminal referral, and factors affecting OFAC's response, including the subject person's scienter, corrective action they take and their cooperation with OFAC, the actual or potential harm to the sanction program's objectives, and other matters. This additional guidance for the public mitigates the potential vagueness concerns plaintiffs have expressed. *See Sun & Sand*, 725 F.2d at 187.

Finally, the regulations note that "OFAC intends to supplement this part 528 with a more comprehensive set of regulations, which may include additional interpretive guidance and definitions, [general licenses], and other regulatory provisions." 90 Fed. Reg. at 28,012 (Background); *accord* § 528.101 note. Such further regulations may also alleviate any concerns plaintiffs have about complying with the sanctions at issue.

As the government stated in its letter to the Court dated May 13, 2025, the government does not oppose consolidation now that these regulations have been issued and the government has had the opportunity to be heard regarding their effect.

## II.     Plaintiffs' Position

### A. Consolidation

Nothing in the Regulations provides any reason for this Court to decline to exercise its discretion under Fed. R. Civ. P. 65(a)(2) to consolidate any hearing on Plaintiffs' pending motion for preliminary injunction with a trial on the merits.

3

The Regulations' only material significance for the present action, apart from confirming the Executive Order's unconstitutionality for the reasons described below, is the statement in § 528.205 that "[t]he prohibitions contained in this part do not apply to any transactions that are exempt pursuant to section 203(b) of the International Emergency Economic Powers Act [IEEPA] (50 U.S.C. 1702(b))."  Plaintiffs' claim that Executive Order 14,203 is *ultra vires* under IEEPA, *see* Count III of the Complaint, was based on the absence of such an explicit statement in Executive Order 14,203 ("EO 14,203").  As the Government has now conceded that the Executive Order's prohibitions on speech do not apply to speech covered by the Berman Amendment, Plaintiffs will not pursue the *ultra vires* claim.  There is no other impact on the case because, as Defendants expressed in their opposition to the motion for preliminary injunction, it is their view that the Berman Amendment does not cover speech that is prohibited by EO 14,203, such as Plaintiffs' "interactive and dynamic 'training' or 'education.'"  ECF No. 56 at 22.  In short, EO 14,203 prohibits Plaintiffs' speech.

Consolidation remains appropriate.  As Plaintiffs previously observed, ECF No. 58, consolidation would conserve judicial resources and eliminate unnecessary delay because the motion for preliminary injunction and the relief sought in a final judgment both require the Court to determine whether EO 14,203 is unconstitutional.  This question can be determined on the law alone, without the need for factual development.  Moreover, the Court previously held that substantively identical language likely violated the First Amendment and could survive neither strict nor intermediate scrutiny.  *See Open Soc'y Justice Initiative v. Trump,* 510 F. Supp. 3d 198, 211-13 & n.7 (S.D.N.Y. 2021).  Judicial economy thus strongly favors consolidation.  *See Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42, 57 n.9 (2d Cir. 2022); *Cent. Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 198

(2d Cir. 2014).  Consolidation is especially merited in the present circumstances given the ongoing deprivation of Plaintiffs' right to free speech, which has now lasted more than five months.  *See Succow v. Bondi,* No. 3:25-cv-250 (SVN), 2025 U.S. Dist. LEXIS 85973, at *2 (D. Conn. May 6, 2025).[1]  Each of these reasons for consolidation applies with equal if not greater force after the issuance of the Regulations.[2]

### B. Merits

With respect to the merits of EO 14,203's violation of the First Amendment, the Regulations refute Defendants' attempt to suggest that Plaintiffs' speech is not prohibited by the Executive Order, *see* ECF No. 56 at 11-12.  Section 528.506 incorporates a general license permitting the provision of certain legal services to or on behalf of persons whose property and interests in property are blocked pursuant to the Executive Order in relation to U.S. law and proceedings in the United States.  The Regulations go on to provide that "[t]he provision of any other legal services to or on behalf of persons whose property and interests in property are blocked pursuant to § 528.201, not otherwise authorized in this part, *requires the issuance of a specific license*."  § 528.506(b) (emphasis added).  As such, the Regulations confirm that types of speech that Plaintiffs wish to engage in are prohibited by EO 14,203.

The fact that the Regulations refer to the possibility of applying for a specific license does not cure the Executive Order's constitutional infirmity.  "[T]he Government may not condition speech 'on obtaining a license or permit from a government official in that official's boundless

---

[1] In accordance with paragraph 4(D) of Your Honor's Individual Rules and Practices in Civil Cases, a copy of this case was included as an attachment to ECF No. 58.

[2] The Regulations include a note to § 528.101 stating that OFAC intends to issue further regulations.  The prospect that additional regulations on undefined topics might be issued at some unspecified time provides no grounds for further prolonging Plaintiffs' ongoing irreparable harm.

discretion.'" *Open Soc'y Justice Initiative*, 510 F. Supp. at 212 (quoting *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 764, (1988)). Here, the Regulations confirm that the Government enjoys such discretion because OFAC is empowered to "exclude any person, property, transaction, or class thereof from the operation of any license or from the privileges conferred by any license" and "to restrict the applicability of any license to particular persons, property, transactions, or classes thereof." § 528.503. Plaintiffs are thus under no obligation to seek and be denied a license before challenging the constitutionality of the Executive Order. The Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *Lakewood*, 486 U.S. at 755-56. This is because such a "licensing statute . . . constitutes a prior restraint and may result in censorship." *Id*. at 757. *See also id*. at 760 (noting the "direct … threat" that conditioning speech on obtaining a license poses to the right of free speech where recordkeeping and reporting requirements allow the Government to "view the actual content of the [licensed] speech"). The licensing scheme thus underscores—rather than cures—the First Amendment violation.

In regard to the merits of EO 14,203's violation of the Fifth Amendment because of its unconstitutional vagueness, the Regulations conspicuously do *not* define or otherwise provide guidance for interpreting the language that is the basis for Plaintiffs' claim, namely the prohibition on "services by, to, or for the benefit of" a designated person. The Regulations therefore provide no assistance in elucidating the meaning of the relevant text. They thus fail to cure the Executive Order's constitutional defect.[3]

---

[3] Defendants are not helped by the theoretical possibility that they could choose to clarify EO 14,203's unconstitutionally vague terms in the context of considering an application for a license. Plaintiffs are not obligated to apply for a license as a predicate for challenging the Executive

Contrary to Defendants' argument that EO 14,203 is not unconstitutionally vague because of the use of "similar terms" in other executive orders, ECF No. 56 at 17, the Regulations expressly disclaim resort to other executive orders as a means for interpreting EO 14,203. Section 528.101 warns: "Differing foreign policy and national security circumstances may result in *differing interpretations* of similar language among the parts of this chapter" (emphasis added).

The reference in § 528.702 of the Regulations to Appendix A to Part 501 does not render the Executive Order any less unconstitutionally vague or make it comport with the First Amendment. As § 528.702 itself acknowledges, Appendix A simply provides a "general framework for the enforcement of all economic sanctions programs administered by OFAC, including enforcement-related definitions, types of responses to apparent violations, general factors affecting administrative actions, civil penalties for failure to comply with a requirement to furnish information or keep records, and other general civil penalties information." The Appendix thus neither sheds light on the meaning of the unconstitutionally vague language in EO 14,203, nor prevents Defendants from enforcing prohibitions on speech that contravene the First Amendment.

Moreover, under the enforcement framework described in Appendix A, OFAC retains discretion to determine when and against whom to enforce EO 14,203's prohibitions on speech. In *Open Soc'y*, this Court determined that the Executive Order's substantively identical antecedent was likely unconstitutional despite its acknowledgment of Appendix A, 510 F. Supp. 3d at 204.

---

Order's constitutionality. *Lakewood*, 486 U.S. at 755-56. Nor is there any basis for concluding that any such clarification would be given. Defendants have now had multiple opportunities to clarify EO 14,203, including in the Regulations and their submissions in this action. Defendants have foregone each opportunity. This case is thus unlike *United States v. Sun & Sand Imps., Ltd.* where "the record indicate[d] that the [government] *did provide such advice*" about compliance, 564 F. Supp. 1402, 1405 (S.D.N.Y. 1983), *aff'd*, 725 F.2d 184 (2d Cir. 1984) (emphasis added).

Appendix A was likewise referenced in that Executive Order's implementing regulations, 85 Fed. Reg. 61816, § 520.701 (Oct. 1, 2021). The reference to Appendix A in the Regulations provides Defendants no greater help here.

In light of the above, Plaintiffs respectfully request that the Court consolidate under Fed. R. Civ. P. 65(a)(2) and proceed expeditiously to a final judgment.

| | |
|---|---|
| Dated: July 11, 2025 | Respectfully submitted, |
| /s/ Andrew B. Loewenstein<br>Andrew B. Loewenstein (pro hac vice)<br>Christopher Hart (pro hac vice)<br>Ariella Katz Miller (pro hac vice)<br>FOLEY HOAG LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210<br>617-832-1000<br>aloewenstein@foleyhoag.com<br>chart@foleyhoag.com<br>arkatz@foleyhoag.com<br><br>Nicholas M. Renzler (NR1608)<br>Hannah E. Sweeney (6202584)<br>FOLEY HOAG LLP<br>1301 Avenue of the Americas<br>New York, NY 10019<br>212-812-0400<br>nrenzler@foleyhoag.com<br>hsweeney@foleyhoag.com<br><br>James A. Goldston (2327435)<br>Esti T. Tambay (ET2721)<br>Genevieve B. Quinn (GQ9239)<br>OPEN SOCIETY FOUNDATIONS<br>Open Society Justice Initiative<br>224 West 57th Street<br>New York, NY 10019, United States<br>212-548-0600<br>james.goldston@opensocietyfoundations.org<br>esti.tambay@opensocietyfoundations.org<br>genevieve.quinn@opensocietyfoundations.org<br><br>*Counsel for Plaintiffs* | JAY CLAYTON<br>United States Attorney for the<br>Southern District of New York<br><br>/s/ Benjamin H. Torrance<br>Benjamin H. Torrance<br>Assistant United States Attorneys<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007<br>Telephone: (212) 637-2703<br>benjamin.torrance@usdoj.gov<br><br>*Counsel for Defendants* |